FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 21 2009

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CARLYLE WRIGHT,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

CIVIL ACTION
NO. 1:07-cv-0703-GET

O R D E R

The above-styled matter is presently before the court on defendant's motion for summary judgment [docket no. 66].

On March 27, 2007, plaintiff filed this action against the United States of America alleging that he was injured when he was struck by a forklift operated by an employee of the United States Postal Service ("Postal Service"). Plaintiff alleges that he was at the Postal Service's Duluth, Georgia Pickup and Distribution Center ("North Metro P & DC") loading dock area in the normal course of his duties as a truck driver for H & H Transport ("H&H") at the time of the accident.

On August 22, 2008, defendant filed a motion for summary judgment arguing that plaintiff had the status of a "borrowed servant" under Georgia law and, therefore, plaintiff's exclusive remedy against the defendant was through the Georgia Worker's Compensation Act. Defendant also argues that plaintiff is precluded from pursuing his claim against defendant under the doctrine of judicial estoppel because he failed to disclose the

existence of the tort claim against the United States to the United States Bankruptcy Court when plaintiff sought bankruptcy protection.

### Standard

Courts should grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must "always bear the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). That burden is 'discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325; see also U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991).

Once the movant has met this burden, the opposing party must then present evidence establishing that there is a genuine issue of material fact. Celotex, 477 U.S. at 325. The nonmoving party must go beyond the pleadings and submit evidence such as affidavits, depositions and admissions that are sufficient to demonstrate that if allowed to proceed to trial, a jury might return a verdict in

his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). If he does so, there is a genuine issue of fact that requires a trial. In making a determination of whether there is a material issue of fact, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Id. at 255; Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987). However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. Id. at 248. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof, and (2) the summary judgment movant has made a plausible showing of the absence of evidence of the necessary element. Celotex, 477 U.S. at 323.

## Facts

In light of the foregoing standard, the court finds the following facts for the purpose of resolving this motion for summary judgment only. Plaintiff was hired by H&H in 2003 as a truck driver to transport mail from the North Metro Distribution Center to post offices in Lawrenceville, Duluth, Alpharetta and

Cumming. On March 31, 2004, plaintiff, while employed by H&H, was injured by a forklift at the Postal Service's North Metro P & DC. On the day of the accident, plaintiff was loading mail.

H&H had a contract with the Postal Service to transport mail between Postal Service facilities (the "Contract"). The Contract was in effect at the time of the accident and governed H&H's relationship with the Postal Service.

H&H's truck drivers were required by the contract to load, transport, and unload all classes of mail at the "headout, en route, and destinating" offices. The contract also required H&H's truck drivers to report to the appropriate Postal Service facility in sufficient time to load and depart on schedule. Specific times at which H&H would need to have its truck drivers arrive at and depart from the various Postal Service locations, as well as the specific arrival and departure times for each stop, were set out in the contract. The Contract also set out the specific times in which H&H truck drivers were required to complete the loading of U.S. Mail onto their respective trucks.

H&H's truck drivers were required to "drop trailer" upon arrival at Postal Service destinations as directed by a postal official and to pick up outbound loads at locations directed by a postal official prior to departure from Postal Service facilities. H&H truck drivers were required by the contract to make "extra trips" as ordered by the Postal Service. Prior to departing from

a Postal Service facility, H&H's truck drivers were required to inquire as to whether all mail had been tendered. Likewise, H&H truck drivers were required to report to the Postal Service Administrative Official or his designee prior to leaving the Postal Service premises.

The Contract imposed duties on H&H's truck drivers to protect the U.S. mail from loss, depredation or damage and required H&H truck drivers to comply with the specified appearance, capabilities and character guidelines.

The Contract allowed the Postal Service to make minor service changes to the truck drivers' duties such as "orders directing an extension, curtailment, change in line of travel, revisions of route, or increase or decrease in frequency of service or number of trips and fixing an adjustment in the supplier's compensation which increases the supplier's rate of pay by no more than $2,500." However, "[s]ervice changes other than minor service changes, including increases or decreases in compensation" were to be made by mutual agreement of the parties.

In March 2004, H&H did not have any work other than for the Postal Service. H&H could not countermand any order that the Postal Service gave to plaintiff unless that order contradicted a specific term of the contract. Furthermore, H&H was required to affirmatively order its employees to comply with the provisions of the Contract with the Postal Service. The Postal Service could

deny access to the U.S. mail to any of H&H's employees and could order H&H's employees off of Postal Service property. If the Postal Service ordered an H&H employee off of Postal Service property, H&H could no longer allow that employee to work on any of its contracts with the Postal Service. H&H was required to deny access to the U.S. Mail to any of its employees or personnel when required to do so by the Postal Service. H&H was prohibited from employing any individual to conduct operations under the Contract who was barred by the Postal Service regulations from performing such duties. The Postal Service could have ordered plaintiff off of Postal Service property on the date of the accident if it was in the Postal Service's best interests to do so, if the Postal Service had good cause to do so, or if H&H was in default of the Contract.

Jerry Hickox, the owner and operator of H&H, instructed plaintiff, generally, of his duties consistent with the requirements set forth in the contract. Hickox would be present at the Postal Service premises at various times working on H&H trucks, driving H&H trucks, supervising, doing everything he needed to do to operate H&H. If any problem arose during plaintiff's work day at the Postal Service, it would be addressed by Hickox. Any information that plaintiff needed that was pertinent to delivery and pick up of the mail generally came through Hickox. Generally, instructions regarding route and time to leave were all provided by H&H to plaintiff through Hickox.

At the time of the accident on March 31, 2004, H&H did not have any supervisory personnel on location at the North Metro P&DC. Hickox was not present nor does plaintiff recall speaking to him that day. No one from H&H was immediately directing or supervising plaintiff at the Postal Service facility on that date.

Shortly before the accident, plaintiff was engaged in loading U.S. Mail. Plaintiff had reported to the dock expediter, a Postal Service employee, regarding the percentage of mail that he had loaded onto his truck, as required by the Postal Service.

Plaintiff submitted a workers' compensation claim based on the accident within a month after the accident. Plaintiff received workers' compensation benefits as a result of the accident.

## Discussion

Absent a waiver, sovereign immunity shields the federal government from suit. See FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994). Unless the United States waives its sovereign immunity, federal courts lack subject matter jurisdiction over claims filed against the United States. Id.

The United States has consented to a limited waiver of its sovereign immunity by enacting the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2671, *et seq.*, which waives the United States sovereign immunity from certain tort actions based on the conduct of its employees in the course of their employment. See 28 U.S.C. § 1346(b)(1). The government may be held liable under the

FDIC only "to the same extent as a private individual under like circumstances...." See 28 U.S.C. § 2674. The court applies "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In the instant action, the accident occurred in Duluth, Georgia. Therefore, Georgia law determines the extent of the United States' liability.

The Georgia Workers' Compensation Act provides the exclusive remedy for an employee seeking compensation from his employer for a workplace injury. O.C.G.A. § 34-9-11(a). The exclusive remedy provision also has been applied to the employee's "statutory employer" and entities for which the employee is considered a "borrowed servant." See Carver v. Jasper Const. Co., 183 Ga. App. 485, 485 (1987); Six Flags Over Georgia, Inc. v. Hill, 247 Ga. 375, 377 (1981). Therefore, even though an entity is not the immediate employer, it may still be immune from suit under the exclusive remedy provision of the Georgia Worker's Compensation statutes by an application of the "borrowed servant" and/or "statutory employer" doctrines. Id.

Georgia courts apply a three-part test to determine whether the borrowed servant doctrine applies. The evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant. See Six Flags, 247 Ga. at 377. "[T]he

focus of the borrowed servant test must be the special master's control at the time of the injury, rather than generally...." See Preston v. Georgia Power Co., 227 Ga. App. 449, 452 (1997); Six Flags, 247 Ga. at 377.

Defendant argues that plaintiff was a "borrowed servant" of the Postal Service at the time of the accident. As a borrowed servant, according to defendant, plaintiff's exclusive remedy for his injuries was under the Georgia Workers Compensation Act pursuant to which plaintiff already has received benefits. Plaintiff contends that he was an employee of H & H Transport and received his instructions and supervision from Hickox at H&H, making the borrowed servant doctrine inapplicable.

Just prior to the accident at issue, plaintiff was engaged in loading U.S. mail at the Postal Service's North Metro P & DC. Moments before the accident, plaintiff was reporting to the dock expediter, a Postal Service employee, regarding the percentage of mail plaintiff had loaded onto his truck as required by the Contract.

There were no H&H supervisory personnel on location at the North Metro P & DC at the time of the accident. Even if H&H had a supervisor at the scene, H&H was contractually required to affirmatively order its employees to comply with the provisions of the contract with the Postal Service. Although plaintiff argues that he remained under the control of H&H because he generally

received his direction from Hickox, the issues is whether the Postal Service had control over plaintiff *at the time of the accident.*  Plaintiff points the court to no evidence which would support a finding that Hickox, and not the Postal Service, retained control over plaintiff at that time.  In fact, even when Hickox directed plaintiff's duties and activities, it is undisputed that he was conveying the Postal Service's directions pursuant to the Contract.  As the Postal Service had complete control and direction over plaintiff's job at the time of the accident and H &H had none, defendant has established the first two elements of the borrowed servant test.

Finally, defendant effectively had the right to discharge plaintiff at the time of the accident.  The Postal Service could order H & H's employees off of Postal Service Property.  Georgia courts have held that such power amounts to a right to discharge that employee for the purpose of the borrowed servant test.  See Preston, 227 Ga. App. at 452 (finding that because defendant had the unilateral right to discharge plaintiff from the particular work he was engaged in at the time of his injury, plaintiff was a borrowed servant of defendant).  H&H's contract with the Postal Service provided that if the Postal Service ordered an H & H employee off of Postal Service property, H&H could no longer allow that employee to work on any of its contracts with the Postal Service.  At the time of the accident, the only work H&H did was

for the Postal Service. Therefore, the Postal Service effectively had the unilateral right to discharge plaintiff at the time of the accident.

Therefore, having considered the arguments of the parties, the court finds that plaintiff was the borrowed servant of the Postal Service. As such, plaintiff's claims against defendant are barred by the Georgia Workers' Compensation Statutes. Accordingly, defendant's motion for summary judgment [docket no. 66] is GRANTED. In light of the foregoing, the court need not address the issue of judicial estoppel presented as an alternative grounds for defendant's motion for summary judgment.

### Summary

Defendant's motion for summary judgment [docket no. 66] is **GRANTED**.

SO ORDERED, this 21 day of April, 2009.

_____
G. ERNEST TIDWELL, JUDGE
UNITED STATES DISTRICT JUDGE